**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

BARBARA BAUMAN, on behalf of herself
and all others similarly situated,

    Plaintiff,

v.

CREATIVE BIOSCIENCE
LABORATORIES, LLC, and
CREATIVE BIOSCIENCE, LLC

    Defendants.

_____/

Civil Action _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff, Barbara Bauman ("Plaintiff"), through her undersigned counsel, brings this action on her own behalf and on behalf of a Class of persons and entities defined herein against Defendants, Creative BioScience Laboratories, LLC and Creative BioScience, LLC (collectively "Defendants") and, for her Complaint, alleges, upon information and belief and based on the investigation to date of her counsel, as follows:

### INTRODUCTION

1. This is a class action brought individually by Plaintiff and on behalf of a class of persons similarly situated, (the "Class" or "Class Members"), who purchased the weight-loss dietary supplement BioScience Laboratories Garcinia Cambogia 1234 (the "Product"). Defendants' efficacy claims for the Product are false and misleading. Defendants do not include the represented amount of the active ingredient, hydroxycitric acid ("HCA"), in the Product.

2. Sales of retail diet pills, combined with meal replacements, are a billion-dollar industry in the United States annually.

1

3. Defendants advertise, manufacture, market, sell and distribute the Product in the growing and extremely competitive diet/weight-loss dietary supplement industry as a highly effective appetite suppressant, fat burner, and weight-loss pill. Although Defendants boast about the Product's efficacy on their labeling and in their advertising, none of the promised benefits are or can be delivered by the Product.

4. To make matters worse, Defendants only provide approximately 6.93% of the total amount of HCA they have claimed is in each serving of the Product on its label.

5. In late 2012, Dr. Mehmet Oz ("Dr. Oz.") of the highly popular TV show, "The Dr. Oz Show," claimed on his website that Garcinia Cambogia was the "Newest, Fastest Fat-Buster" and that, "Thanks to brand new scientific research, I can tell you about a revolutionary fat buster" with the words "No Exercise. No Diet. No Effort" on the screen behind him.

6. In June 2014, these representations regarding weight-loss products, including Garcinia Cambogia, were called into question by the United States Senate's Subcommittee on Consumer Protection, Product Safety, and Insurance, where Dr. Oz was called to testify.

7. When presented with studies refuting the efficacy of Garcinia Cambogia, Dr. Oz testified that he could not be held responsible for what companies say about their products, that he had toned down some of his language, and that he would publish a list of products he believes can actually help people lose weight.

8. With all the notoriety surrounding this new "miracle" diet pill, many dietary supplement manufacturers, including Defendants, exploited this opportunity to make money off unassuming consumers, regardless of the scientific research refuting claims regarding the Product.

9. As a result of Defendants' unfair, deceptive, fraudulent, and misleading practices, Plaintiff and Class Members were deceived into purchasing the Product they would not

otherwise have purchased, denied the benefit of their bargain, or would have only purchased it at a substantially lower price than that charged by Defendants.

## PARTIES

10.     Barbara Bauman is a resident and citizen of Livonia, Michigan. Plaintiff purchased the Product several times between 2017 through 2019, from Vitamin World in Livonia, Michigan.  Prior to purchase, Plaintiff reviewed, read, and relied on the false claims made by Defendants on the front and back labels of the product packaging and in marketing materials authored and/or approved by the Defendants as more fully set forth in this Complaint. Based on Defendants' representations, Plaintiff purchased Defendants' Product several times, with the most recent purchase on January 22, 2019, when Plaintiff purchased 2 bottles of Garcinia Cambogia 1234 for $27.98 at a Vitamin World brick-and-mortar store in Livonia, Michigan.

11.     Defendant, Creative Bioscience Laboratories, LLC is a Utah limited liability company having a principal place of business located at 381 W. Ironwood Dr., S. Salt Lake City, UT 84115-2912.

12.     Defendant Creative Bioscience, LLC is a Utah limited liability company having a principal place of business located at 381 W. Ironwood Dr., S. Salt Lake City, UT 84115-2912.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5,000,000.00, exclusive of interests and costs, and many Members of the proposed Class are citizens of states different from that of the Defendants (who are domiciled and licensed in Utah and otherwise maintain their principal place of business in Utah).

14.     This Court has personal jurisdiction over Defendants because they conduct substantial business in this judicial district and division, and intentionally and purposefully

directed the Product into the stream of commerce, including the sale and distribution of the Product, within the districts of Michigan and throughout the United States.

15. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391 because Defendants have advertised in this district and division and received substantial revenues and profits from sales of its Product in this district and division; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred within this district and division. Additionally, Plaintiff is a citizen of and resides within this District.

## FACTUAL ALLEGATIONS

16. Defendants recklessly boast—and advertise—about the "efficacy" of the main active ingredient in the Product, ignoring the volume of scientific literature refuting the fat burning, weight loss, and appetite suppression claims attributed to Garcinia Cambogia.

17. Upon information and belief, Defendants had access to, but knowingly and/or recklessly disregarded competent and reliable scientific evidence showing that the main active ingredient in the Product, Garcinia Cambogia/HCA does not provide the weight loss benefits the Defendants claim.

18. Defendants made false claims regarding the efficacy of the Product in providing weight loss, weight management and inhibiting fat production.

19. Defendants also knowingly and/or recklessly misrepresented the amount of HCA actually contained in the Product as compared to the Product's label and packaging.

### *The Product's False and/or Misleading Labeling and Marketing Claims Regarding Garcinia Cambogia*

20. Defendants state the following false/misleading claims on the Product's label and/or website, as shown below:

    a. Contains 60% HCA (Hydroxycitric acid)

    b. Believed to reduce hunger by its appetite suppressant properties

      c.      Use results in increased thermogenesis (fat oxidation)

      d.      Controls cravings by boosting serotonin levels in your brain

      e.      Could improve your mood and sleep quality



5



21.     All of Defendants' labeling and marketing claims regarding the Product are predicated on HCA's purported ability inhibit the extramitochondrial enzyme, adenosine triphosphate (ATP)-citrate-lyase.

### Why Defendants' Labeling and Marketing Claims are False and/or Misleading Regarding Garcinia Cambogia

#### Appetite Suppression

22.     Since HCA reportedly promotes weight loss, in part, through suppression of hunger, a study was conducted to determine the effects of HCA on appetitive variables. In the Mattes study, the active treatment group did not exhibit better dietary compliance or significant correlations between appetitive variables and energy intake or weight change. The study did not

support a satiety effect of HCA.[1]

23. The Kovacs study revealed that a two-week supplementation with HCA alone, or in combination with medium chain triglycerides, did not result in increased satiety compared to a placebo, in subjects losing bodyweight.[2]

24. A similar Kovacs study was performed in order to assess the effects of two weeks of supplementation with HCA alone, or combined with medium-chain triglycerides, on satiety and energy intake. Two weeks of supplementation with HCA alone or combined with medium chain triglycerides did not result in increased satiety or decreased energy intake compared to placebo in subjects losing bodyweight.[3]

### *Increased Metabolism, Fat Burning and Weight Loss*

25. As HCA is represented to be a potential anti-obesity agent, a randomized controlled trial (the Heymsfield study) was conducted to evaluate the efficacy of Garcinia Cambogia for body weight and fat mass loss in overweight human subjects. Garcinia Cambogia failed to produce weight loss and fat mass loss beyond that observed with a placebo.[4]

26. The Kriketos study was performed with the objective of determining the effect of HCA on marker substrates of altered metabolism, respiratory quotient ("RQ") and energy expenditure ("EE") in humans, following an overnight fast and during a bout of exercise. The question was whether supplementation with HCA would result in an increase in fat oxidation and

---

[1] Mattes R, Bormann L. Effects of (-)-hydroxycitric acid on appetitive variables. *Physiol Behav* 2000, 71:87-94.

[2] Kovacs E, Westerterp-Plantenga M, Saris W. The effects of 2-week ingestion of (--)-hydroxycitrate and (--)-hydroxycitrate combined with medium-chain triglycerides on satiety, fat oxidation, energy expenditure and body weight. *Int J Obes Relat Metab Disord* 2001a, 25:1087-94.

[3] Kovacs E, Westerterp-Plantenga M, de Vries M, Brouns F, Saris W. Effects of 2-week ingestion of (-)-hydroxycitrate and (-)-hydroxycitrate combined with medium-chain triglycerides on satiety and food intake. *Physiol Behav* 2001b, 74:543-9.

[4] Heymsfield S, Allison D, Basselli J, Pietrobelli A, Greenfield D, Nunez C. Garcinia cambogia (Hydroxycitric Acid) as a potential antiobestiy agent. *J Am Med Assoc* 1998, 280: 1596-1600.

metabolic rate, reflected by an increase in beta-hydroxybutyrate and EE and/or a decrease in RQ. In a fasted state and following three days of HCA treatment, RQ was not significantly lowered during rest or during exercise when compared with the placebo treatment. Treatment with HCA did not affect EE, either during rest or during moderately intense exercise. Furthermore, the blood substrates measured were not significantly different between treatment groups under the fasting conditions of this study. The results did not support the hypothesis that HCA alters the short-term rate of fat oxidation in the fasting state during rest or moderate exercise.[5]

27. The same study mentioned above in paragraph 23 determined the effects of 2-week ingestion of HCA alone or combined with medium-chain triglycerides on fat oxidation, energy expenditure and body weight. Two-week supplementation with HCA alone or in combination with medium chain triglycerides did not result in increased fat oxidation, 24 h EE or bodyweight loss compared to a placebo, in subjects losing bodyweight.[6]

28. The van Loon study was conducted to assess the effects of acute HCA supplementation on substrate metabolism at rest and during exercise in humans. The study found that HCA, even when provided in large quantities, does not increase total fat oxidation in vivo in endurance-trained humans.[7]

29. All of Defendants' claims regarding the Product and its ability to help with appetite control, fat burning and weight loss are false and/or misleading based upon the scientific literature and the dose of HCA contained in the Product.

---

[5] Kriketos A, Thompson H, Greene H, Hill J. (-)-Hydroxycitric acid does not affect energy expenditure and substrate oxidation in adult males in a post-absorptive state. *Int J Obes Relat Metab Disord* 1999, 23:867-73.

[6] Kovacs E, Westerterp-Plantenga M, Saris W. The effects of 2-week ingestion of (--)-hydroxycitrate and (--)-hydroxycitrate combined with medium-chain triglycerides on satiety, fat oxidation, energy expenditure and body weight. *Int J Obes Relat Metab Disord* 2001a, 25:1087-94.

[7] van Loon L, van Rooijen J, Niesen B, Verhagen H, Saris W, Wagenmakers A. Effects of acute (-)-hydroxycitrate supplementation on substrate metabolism at rest and during exercise in humans. Am J Clin Nutr 2000, 72:1445-50.

*Defendants' Mislabeling of the Product by Under-Dosing the Main Active Ingredient, HCA*

30.     Defendants claim the Product contains 1500 mg of Garcinia Cambogia Extract per serving, with 60% concentration of HCA as illustrated in the photograph in paragraph 20, *supra*.

31.     However, according to lab results, commissioned by Plaintiff's attorneys, the Product only contains roughly 11.5% of the claimed HCA,[8] or 104 mg per serving:

Table 1 – Results CDXA-17-003739

| Analyte | Units | Spec. | Result | Reporting Limit |
|---|---|---|---|---|
| Hydroxycitric Acid Free** | mg/serving | NA | 104 | -- |
| Hydroxycitric Acid Lactone | mg/serving | NA | ND | 31 |
| **Total Hydroxycitric Acid** | mg/serving | 1500 | 104 | -- |
| Average Capsule Weight<br>Serving Size: 2 capsule | mg | | 789 | |

32.     Defendants' clear mislabeling of the Product renders it misbranded.

33.     Plaintiff and Class Members were, in fact, misled by Defendants' misrepresentations regarding the true nature of the Product ingredients and its value for the purposes of weight loss.

34.     The difference between the Product as promised and the Product sold is significant. Furthermore, even if the Product were to contain the advertised amount of HCA, the efficacy of the Product (or more accurately, the lack of efficacy) diminishes any purported benefits provided to consumers and the actual value of the Product itself.

35.     Defendants' deceptive statements violate the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 343(a)(1), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular."

---

[8] The Product label has the express claim of "60% hydroxycitric acid," which equals 900 mg of claimed HCA.

36. The introduction of misbranded food into interstate commerce is prohibited under the FDCA.

37. Similar to the FDCA, Michigan prohibits the misbranding of food through the Food Law Act 92 of 2000 § 289.1101, et seq. (the "Act"). The Act provides that food is misbranded "if its labeling is false or misleading in any particular." Id.

38. The Act explicitly incorporates by reference "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the FDCA." Id.

39. The difference between the Product promised and the Product sold is significant and material. The efficacy of ingredients has real impacts on the benefits provided to consumers by the Product and the actual value of the Product.

40. Had Plaintiff and members of the Class known the true nature of the Product, they would not have purchased Defendants' Products or alternatively paid significantly less for them.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Class:

> **All persons residing in the State of Michigan who purchased Defendants' Product for fat burning, weight loss, and/or appetite suppression at any time within the applicable statutes of limitations preceding the filing of this action through and including the date of class certification (the "Class").**

Excluded from the Class are: Defendants and their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; all governmental entities; and the Judge to whom this case is assigned and any immediate family members thereof.

42. Certification of the Plaintiff's claims for class wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class wide basis using the same

evidence as would be used to prove those elements in individual actions alleging the same claims.

43. **Numerosity – Fed. R. Civ. P. 23(a)(1).** The Members of the Class are so numerous that individual joinder of all Class Members in impracticable. On information and belief, there are thousands of consumers who have been affected by the Defendants' wrongful conduct. The precise number of the Class Members and their addresses is presently unknown to Plaintiff, but may be ascertained from the Defendants' books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

44. **Commonality and Predominance – Fed. R. Civ. P. 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

a) Whether the Product, when used by consumers in a normal and customary manner and/or in accordance with its suggested use, works as advertised, marketed, and conveyed by Defendants to consumers;

b) Whether Defendants knew at the time the consumer transactions took place that consumers would not receive the promised benefits of the Product that Defendants claimed they would receive;

c) Whether Defendants breached express and implied warranties in the sale and marketing of the Product;

d) Whether Defendants have been unjustly enriched by the sale of the Product to the Plaintiff and the Class Members;

e) Whether Plaintiff and Class Members received the benefit of their bargain when purchasing the Product;

f) Whether the Plaintiff and the Class Members suffered monetary damages, and, if so, what is the measure of those damages;

g) Whether Plaintiff and the Class Members are entitled to an injunction, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

45. **Typicality – Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the other Class Members' claims because, among other things, all Class Members were similarly injured through the uniform and common misconduct described above.

46. **Adequacy of Representation – Fed. R. Civ. P. 23(a)(4)**. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other Class Members she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel.

47. **Declaratory and Injunctive Relief – Fed. R. Civ. P. 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class Members as a whole.

48. **Superiority – Fed. R. Civ. P. 23(b)(3)**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class Members to individually seek redress from Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**Breach of Express Warranty**
**(On behalf of Plaintiff and the Class)**

49. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

50. Plaintiff and Class Members contracted with Defendants at the time Plaintiff and the other Class Members purchased the Product. The terms of the contract include the promises and affirmations of fact made by Defendants on the Product's packaging and through marketing and advertising, as described above. This labeling, marketing and advertising constitute express warranties and became part of the basis of bargain, and are part of the standardized contract between Plaintiff, Class Members and Defendants.

51. Defendants statements contained in advertising, labeling, marketing and packaging for the Product create an express warranty that the Product was effective at providing fat burning, weight loss, and/or appetite suppression.

52. Plaintiff and Class Members performed all conditions precedent to Defendants' liability under this contract when they purchased the Product.

53. Defendants breached express warranties about the Product and its qualities because the statements about the Product were false because it does not conform to Defendants' statements and promises described above. Plaintiff and Class Members would not have purchased the Product had they known the true nature of the Product's ingredients, what the Product actually contained and the lack of efficacy for its claimed benefits.

54. On March 7, 2019 Plaintiff served Defendants with a pre-suit demand letter, prior to filing this Complaint, requesting the relief sought in this Complaint and notifying Defendants

of the alleged breach of express warranty related to Defendants' marketing and mislabeling of its Product. Defendants have not responded to Plaintiff's pre-suit demand letter.

55. As a result of Defendants' breach of warranty, Plaintiff and Class Members have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from the purchases.

## SECOND CLAIM FOR RELIEF

### Breach of Implied Warranty of Merchantability
### (On Behalf of Plaintiff and the Class)

56. Plaintiff re-alleges and incorporate the preceding paragraphs as if fully set forth herein.

57. Defendants are and were at all relevant times merchants with respect to the Product.

58. Defendants impliedly warranted that the Product was of good and merchantable condition and quality – fit and safe for its ordinary intended us and that the Product conformed to the promises or affirmations of fact made on the container or label, specifically, that it contained 1500 mg of Garcinia Cambogia Extract per serving, with 60% concentration of HCA, and that the Product stimulated weight loss and appetite suppression.

59. The Product was defective and mislabeled at the time it left the possession of Defendants, as set forth above, and Defendants knew of the defect/mislabeling at that time. Thus, the Product, when sold and at all times thereafter, was not in merchantable condition or quality and is not fit for its ordinary intended purpose of providing consumers with benefits of fat burning, weight loss, and/or appetite suppression.

60. By virtue of the conduct described herein and throughout this Complaint, Defendants breached the implied warranty of merchantability.

61. Plaintiff and Class Members have been damaged as a direct and proximate result of Defendants' breach of the implied warranty.

62. Plaintiff and Class Members used the Product in a manner consistent with its intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendants or by operation of law in light of Defendants' conduct.

63. On March 7, 2019 Plaintiff served Defendants with a pre-suit demand letter, prior to filing this Complaint, requesting the relief sought in this Complaint and notifying Defendants of the alleged breach of express warranty related to Defendants' marketing and mislabeling of its Product. Defendants have not responded to Plaintiff's pre-suit demand letter.

64. As a direct and proximate result of Defendants' breach of warranties, Plaintiff and the Class were caused to suffer damages.

## THIRD CLAIM FOR RELIEF

### Unjust Enrichment
### (On behalf of Plaintiff and the Class)

65. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

66. This alternative claim is asserted on behalf of Plaintiff and Class members to the extent there is any determination that any contracts between Class members and Defendants do not govern the subject matter of the disputes with Defendants, or that Plaintiff does not have standing to assert any contractual claims against Defendants.

67. Plaintiff and Class members conferred a benefit on Defendants, and Defendants had knowledge of this benefit. By their wrongful acts and omissions described herein, including selling the defective Product, Defendants were unjustly enriched at the expense of Plaintiff and Class members.

68. Plaintiff's and Class members' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

69. It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the Product.

70. Plaintiff and Class members seek restitution from Defendants and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from its wrongful conduct, and establishing a constructive trust from which Plaintiff and Class members may seek restitution.

**FOURTH CLAIM FOR RELIEF**

**Declaratory Relief Under the Declaratory Judgment Act**
**(On Behalf of Plaintiff and the Class)**

71. Plaintiff incorporates the allegations set forth above as if fully set forth herein.

72. Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

73. Pursuant to 28 U.S.C. § 2201, *et seq.*, there is an actual controversy between Defendants and Plaintiff concerning whether:

  a) Defendants has misrepresented the effectiveness of the Product; and

  b) Defendants knew or should have known of the misrepresentations regarding the efficacy of the Product.

74. Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

75. Despite the studies which have proven Defendants' representations false, Defendants continue to misrepresent the effectiveness of the Product, and have otherwise failed to correct those misrepresentations.

76. Accordingly, based on Defendants' repeated and continued misrepresentations, Plaintiff seeks a declaration that Defendants have misrepresented the efficacy of the Product and that their actions are unlawful.

77. The declaratory relief requested herein will generate common answers that will settle the controversy related to the misrepresented labeling of the Product. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, Barbara Bauman, on behalf of herself and all others similarly situated, respectfully requests that the Court enter an Order awarding the following relief:

A. Declaring that this action may be maintained as a class action, certifying the Class as requested herein, appointing Plaintiff as Class Representative, and appointing the undersigned as Class Counsel;

B. Enjoining Defendants from the unlawful practices and statutory violations asserted herein;

C. Declaring Defendants' practices to be unlawful;

D. A judgment awarding Plaintiff and each of the other Members of the Class their actual damages in an amount according to proof as to Defendants' unlawful conduct, as alleged herein;

E. A judgment awarding Plaintiff and each of the other Members of the Class compensatory, consequential, and special damages in amounts to be proven at trial, as well as statutory damages;

F. An award of punitive damages, to the maximum extent permitted by law;

G. A judgment awarding Plaintiff and the other members of the Class restitution, including, without limitation, disgorgement of all profits and unjust enrichment obtained by Defendants as a result of its wrongful conduct, as alleged herein;

H. An award of delay damages, to the maximum extent permitted by law;

I. Attorneys' fees, expenses, and the costs of this action to the maximum extent permitted by law;

J. An award of pre- and post-judgment interest; and

K. All other and further relief that the Court deems necessary, just, and proper.

## JURY DEMAND

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff, Barbara Bauman, hereby demands a trial by jury of all claims in this Class Action Complaint so triable.

Date: April __, 2019    Respectfully submitted,

*/s/ Nick Suciu III*
Nick Suciu III (Attorney I.D. _____)
**BARBAT, MANSOUR & SUCIU PLLC**
1644 Bracken Rd.
Bloomfield Hills, MI 48302
Tel: (313) 303-3472
Fax: (248) 698-8634
Email: nicksuciu@bmslawyers.com

Jonathan Shub*
Kevin Laukaitis*
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 238-1700
Fax: (215) 238-1968
Email: jshub@kohnswift.com
klaukaitis@kohnswift.com

Gregory F. Coleman*
Rachel Soffin*
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100

Knoxville, Tennessee 37929
Telephone: (865) 247-0080
Facsimile: (865) 533-0049
Email: greg@gregcolemanlaw.com
rachel@gregcolemanlaw.com

*Attorneys for Plaintiff and the Class*
*\*Pro Hac Vice forthcoming*